## MYRE *v.* LUDWIG.

An acknowledgment by a witness, in his deposition, that a release had been delivered to him before he was sworn, does not remove a well-founded objection to his competency.

Where it appears, from the face of the deposition taken by the defendant, that the release was in the hands of the witness, and that he desired it should be filed of record, and the certificate of the justice showed that the deposition was taken in the presence of the plaintiff's attorney, who made no objection, but allowed the witness to be examined and he cross-examined him ; it was held too late to insist at the trial of the cause on more formal proof, that the release had been tendered to witness before he was sworn.

In a suit against the owner of a wagon to recover damages for an alleged non-delivery by his carter of certain wadding to W. & R., after the carter had proved that the wadding was consigned to C. & J. R., to whom he had delivered it; it was held, that C. R., one of the firm, to corroborate the carter's testimony, might prove that the plaintiff was indebted to him and his partner, and that he had promised to send them

wadding for the amount due them, about the time it was delivered to them. There is no rule which prevents a party from giving additional, confirmatory, cumulative, and corroborative evidence of facts previously proved, or which tends to strengthen, add force or probability to such evidence.

ERROR to the Court of Common Pleas of Berks County.

From the record returned, it appeared that this was a suit brought in the court below, in the name of Henry Myre, for the use of Augustus H. Raiguel, the plaintiff in error, against Jacob D. Ludwig, the defendant in error, to recover the value of about fifteen bales of black and white cotton wadding, which, as the plaintiff alleged, the defendant undertook to carry from the borough of Reading to the city of Philadelphia, and to deliver the same to Elisha Wells and William Raiguel, merchants, trading under the firm of Wells and Raiguel; but instead of delivering the wadding to Wells and Raiguel, according to direction and his undertaking, he delivered it to C. and J. Repplier, at their store in the city of Philadelphia, who disposed of and converted the same to their own use.   The action was, therefore, brought on a breach of contract, alleged to have been committed by the defendant, in not delivering the wadding to Wells and Raiguel, as he had undertaken to do.

There was no dispute as to the delivery of the wadding to the carter of the defendant, nor as to the quantity or price thereof.   On the trial of the cause in the court below, one of the witnesses examined by the plaintiff, testified, that he heard Myre, the owner of the wadding, order the carter of the defendant to leave the wadding at Wells and Raiguel's store.

After the plaintiff had closed his case, the defendant offered in evidence the deposition of Peter Sherman, the carter of the defendant, to whose custody the wadding had been intrusted; to which the plaintiff's counsel objected, because the witness was interested; whereupon the defendant's counsel offered in evidence a release from the defendant to Peter Sherman, the witness.   To prove the execution of the release, (which purported to have been *signed* and *delivered* in the presence of Samuel De Puy and Charles Davis,) Charles Davis was called as a witness, who testified, that he saw J. D. Ludwig (the defendant) SIGN the release to P. Sherman.   It was admitted that H. Rhoads, Esq., forwarded the release to Simon Gebhart, Esq., at Somerset, Somerset county.   The court then overruled the objection of the counsel of plaintiff to the deposition, admitted the same as evidence, and sealed a bill of exceptions.

The following is the material part of the deposition, together with a certificate of the justice thereto attached, and referred to in the opinion of this court:

Agreeably to the above rule and notice given, came Peter Sherman, a witness on the part of the defendant, who after having been duly sworn deposed as follows:—

"I was the driver or carter of Jacob D. Ludwig. I got a load of wadding of Henry Myre, of Reading, some six or seven years ago. After I was done loading, I asked Myre for an invoice. Mr. Myre gave me no invoice. I asked him three times for one. He told me to take the load to Reppliers', of Philadelphia, corner of Race and Third streets. I called on Reppliers, and asked them if they had a load of wadding, or twelve bales, to receive from Myre. Reppliers told me they had, and was looking for this a week ago. I then unloaded it at Reppliers'. Reppliers helped me to unload the wadding. I never loaded any wadding at any other time at Myre's, or any other place in Reading. Mr. Ludwig never knew that I was loading the wadding.

"The release hereto attached was handed to witness before being sworn, which deponent requested to be filed of record in this cause.

"Cross-examination by F. M. Kimmel, attorney for plaintiff.

"I, John Neff, a justice of the peace in and for the borough of Somerset, Somerset county, Pennsylvania, do hereby certify that the foregoing deposition of Peter Sherman was duly taken at my office in said borough, in the presence of F. M. Kimmel, attorney for plaintiff, and Simon Gebhart, attorney for defendant, on the 8th day of February, 1844, between the hours of 9 o'clock, A. M., and 3 P. M.—Witness my hand and seal this 8th day of February, 1844.

John Neff, J. P."

The defendant then offered Charles Repplier as a witness, the subject matter of whose testimony was objected to by the counsel of the plaintiff. The court, however, admitted him, and sealed a bill of exceptions. The testimony of this witness is so fully stated in the opinion of this court as to render it unnecessary to report it here. The jury, after having been charged by Banks, president, returned a verdict for the defendant.

Upon the removal of the record to this court by the plaintiff, the following errors were assigned:

1. The court erred in admitting the evidence mentioned in the first bill of exceptions.

2. The court erred in admitting the evidence mentioned in the second bill of exceptions.

*Darling*, for plaintiff in error.

The court erred in admitting the deposition of Peter Sherman. He was interested. He was liable to Ludwig his employer. To elucidate

these positions, he cited Schuylkill Navigation Company *v.* Harris, 5 Watts & Serg. 28.

It did not appear that any consideration for the release was paid by Sherman to Ludwig. The release was executed at Reading, in the absence of Sherman, and then sent to Simeon Gebhart, Esquire, at Somerset; and he does not prove that he delivered it to Sherman. It was incumbent on the defendant to show that this release was properly executed for a valuable consideration, and delivered to Sherman. Gebhart might have proved the delivery of the release. The justice of the peace could not prove this by stating in the body of the deposition, that it was delivered. It was no part of his duty to certify any thing in relation to this matter. Justices of the peace cannot certify to an independent fact and make that evidence.

The court erred in admitting the testimony of Charles Repplier.

It is the business of the trial to ascertain the truth of the allegations put in issue; and no evidence is admissible which does not tend to prove or disprove the issue joined. In support of this principle he cited 1 Starkie on Evidence, 386.

Repplier was permitted to prove that Myre was indebted to the Reppliers; that he made a promise in June, 1836, to pay this debt in wadding; that he received wadding from Sherman and gave Myre credit for it to the amount of $285. This indebtedness of Myre to Repplier did not tend to prove, that Myre did not, in October, 1836, send by Ludwig's team this wadding to Wells & Raiguel. Neither did the promise of Myre to Reppleir, to pay him in wadding six months before this wadding was loaded in Ludwig's team, tend to prove that this wadding was not consigned to Wells & Raiguel, nor that Sherman was not directed to unload it there; and that he did not undertake to deliver it to Wells & Raiguel.

It was not relevant in this case to prove the state of Myre's accounts with those with whom he had done business.

Myre may have been indebted to twenty persons and promised to pay them all in wadding; but proving this would not prove that he did not choose to send this wadding to Wells & Raiguel; that he did not direct Sherman to unload it there, or that Sherman did not contract to deliver it as directed.

Would the testimony of Repplier have been relevant evidence if Sherman's deposition had not been taken? If not, the testimony of Sherman could not make it evidence.

The effect of this evidence was to make an impression on the jury that Myre owed Repplier, that the wadding went to pay Myre's debt, and that no injustice had been done.

The testimony of Repplier undoubtedly induced the jury to find for the defendant.

*Davis*, for defendant in error.

A person for whose use a suit is brought, need show no right in himself. Montgomery *v.* Cook, 6 Watts, 238.

A nominal plaintiff cannot be a witness. Railroad *v.* Johnson, 7 Watts & Serg. 317.

If testimony be offered by one party, the other may require the purpose for which it is offered to be stated; if this be not done, and the evidence be admitted generally, it is not error if it were competent for any purpose. McClelland *v.* Lindsay, 1 Watts & Serg. 360.

The testimony of Charles Repplier as to indebtedness of Myre, even without the promise on that account to deliver the wadding, was presumptive evidence at the least, Koons *v.* Hartman, 7 Watts, 25, 26; but clearly with the promise to deliver the wadding under the pressure proved, that if he did not they would sue him, was evidence to go to the jury, and from which they might reasonably infer that Myre had directed the carter of Ludwig to take the wadding to Reppliers'.

In assumpsit, where the evidence is doubtful, almost any thing which may probably throw any light on the matter, is usually and in general properly admitted. Parker *v.* Donaldson, 6 Watts & Serg. 133; Commercial Bank *v.* Wood, 7 Watts & Serg. 92; Christman *v.* Siegfried, 5 Watts & Serg. 400; Snyder *v.* Wertz, 5 Wharton, 163.

Repplier was a competent witness. Scott *v.* Wells, 6 Watts & Serg. 369. He was not directly interested in the event of the suit, and his interest in the question affects his credibility, not his competency. McCredy *v.* Schuylkill Navigation Company, 3 Wharton, 441; Jackson *v.* Wright, 3 Wharton, 606. But his competency was not objected to; it was his testimony. The verdict and judgment in this suit could not be given in evidence either in an action by Myre against the Reppliers, or by Ludwig against the Reppliers.

Repplier would be equally answerable to Ludwig or to Myre. If Ludwig lost, he would be liable to an action at his suit; if Myre lost, Repplier would be answerable to him. And this because the verdict and judgment in this case would not be evidence, in the cases supposed, at all. Ilderton *v.* Atkinson, 7 Term Rep. 480, 481; Steffen *v.* Hartzell, 5 Wh. 448; Potter *v.* Bard, 4 Watts, 15, 20.

As to Ludwig, he could not bring suit successfully against Repplier, because six years and more had expired from the delivery of the goods. 2 Starkie on Ev. 752, in note; Ludlow *v.* Union Insurance

Company, 2 Serg. & Rawle, 132; Wright *v.* Nicholls, 1 Bibb. 298, 302; 2 Mass. Rep. 108.

The opinion of the court was delivered by ROGERS, J.

This was an action on the case for not delivering goods according to consignment. On the trial, the defendant offered in evidence the deposition of Peter Sherman, a wagoner in the employment of the defendant, to whose custody the goods were intrusted, and by whose default, if any, they were not delivered according to order. The plaintiff objected to reading the deposition, because the witness was interested. Whereupon the defendant executed a release; and whether the release was delivered was the question. On that depended the competency of the testimony. The facts were these: Ludwig, the defendant, executed a release which purports to be signed and delivered in the presence of Samuel De Puy and Charles Davis. It was signed but not delivered in their presence; but the release was forwarded to Simon Gebhart, Esq., in Somerset county, who acted as the attorney of the defendant. It appears from the certificate of the justice, which is evidence for that purpose, that the deposition was taken in the presence of T. M. Kimmel, attorney for plaintiff, and of Mr. Gebhart. It also appears on the face of the deposition, that the release was in the hands of Sherman, and that he desired it should be filed of record. All this is done in the presence of the plaintiff's attorney, who makes no objection, but allows the witness to be examined, and who cross-examines him. It is too late to insist upon more formal proof at the trial. A witness cannot remove by his own oath a well-founded objection to his competency; therefore, any acknowledgment of his, on his oath, that the release was delivered, goes for nothing. It must be proved by independent testimony. But notwithstanding this, we think sufficient appears to justify the court in receiving the deposition. On suit brought by the defendant against the witness, the facts, which now appear, would bar the action.

We put the case on the presence of plaintiff's attorney when the deposition was taken, making no objection on account of the non-delivery of the release. It would take the defendant by surprise to rule the deposition out at the trial, on an objection which might have been made, and if made, removed, when the deposition was taken before the justice.

It is said, the court erred in admitting the evidence mentioned in the second bill.

The action was brought, as has been before said, for not delivering goods according to consignment. The defence is, that the goods were

delivered according to order. Peter Sherman proved that he was the carter of Ludwig; that he got a loading of Myre, who was the owner; and that he asked Myre for an invoice, but none was given to him. That Myre told him to take the load, which consisted of wadding, to Reppliers, of Philadelphia, corner of Race and Third streets; that he called on Reppliers and asked them if they had a load of wadding, twelve bales, to receive from Myre. Repplier told him he had, and that he had been looking for it a week ago. He further stated that he knew nothing of the dealing of Myre with Repplier until after the wagon was unloaded.

To corroborate the testimony of Sherman, the court permitted the defendant (contrary to the objection of the plaintiff, and which forms the subject matter of the second bill) to prove by Charles Repplier, as follows:

That this receipt, viz., a receipt for the goods delivered by the carter, was signed by himself as one of the firm of C. & J. Repplier. Twelve bales of wadding were delivered to us, on the 21st Nov., 1836. After the wadding was delivered, he gave the receipt to the carter. Previous to that, Myre became indebted to us, and on the 21st Nov., 1836, was indebted $283 31 cents, with interest from January 1, 1835. For this amount we frequently asked Mr. Myre. It was about six months before Nov., 1836, he met Myre in Philadelphia; told him they must sue him unless he paid the debt. He then promised to send us wadding for the amount due, and on the 21st Nov., 1836, this wadding was brought to our place of business by Peter Sherman. If this testimony be true, it adds force to the evidence of Sherman, who testifies that Myre ordered him to deliver the wadding to Reppliers; that he obeyed the order of the owner of the goods as he was bound to do. It also gives plausibility to Sherman's account of the transaction, because, what so probable as that Myre should order goods to a man in payment of a just debt, and to whom he solemnly promised to send them. And what adds considerably to the strength of the testimony is, that there is no proof of collusion between Sherman and Repplier, with whom it seems he had no acquaintance, or any knowledge of any dealings between them. It was also evidence of the delivery of the goods, and negatives any idea that they were secreted either by the defendant or his agent.

It is undoubtedly a rule of law, that you cannot give evidence of the good character of a witness until it is previously impeached; but this rule does not extend so far as to exclude evidence corroborative of the testimony of your principal witnesses. You have the right, subject to the control of the court, to prove circumstances which fortify and add

E 2

probability or certainty to the truth of their testimony. There is no rule of law which has come under my observation, which prevents a party from giving additional, confirmatory, cumulative and corroborative evidence of facts previously proved, or which tends to strengthen, add force or probability to such evidence. Such testimony, however, is subject to the control of the court, who may doubtless interfere to prevent delay or unnecessary waste of time.

Judgment affirmed.